## LAURA M. HAMILTON *vs.* CITY OF CAMBRIDGE.

Suffolk.    November 9, 1914. — November 30, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, DE COURCY, & CROSBY, JJ.

*Way,* Public: defect.    *Words,* "Worn down."

In an action against a city under R. L. c. 51, § 18, for personal injuries sustained by reason of an alleged defect in a sidewalk of a highway of the defendant, where the alleged defect consisted of a V shaped depression two or three inches deep and between six and eight inches long about in the middle of a brick sidewalk where two bricks were broken in halves, if it appears that the place was a much travelled business thoroughfare near a subway entrance and that a police officer was stationed there every evening, but there is no evidence in regard to the existence of the defect or the appearance of the sidewalk before the accident and no evidence in regard to the nature and appearance of the depression from which an inference properly can be drawn as to the length of time it had existed, it is right for the presiding judge to order a verdict for the defendant, because there is no evidence that the defendant by the exercise of proper diligence might have had reasonable notice of the defect.

DE COURCY, J.    The alleged defect was in the sidewalk of Massachusetts Avenue in Cambridge, near a city water shut-off. There was testimony that two bricks were broken in halves, making a V shaped depression two or three inches deep and six or eight inches long. It did not appear how this condition was caused, or how long before the accident it had existed. The trial judge * directed a verdict for the defendant, on the ground that there was no evidence to show that the city "had or by the exercise of proper care and diligence might have had reasonable notice of the defect." The correctness of this ruling is before us on the plaintiff's exceptions.

The action is brought under R. L. c. 51, § 18; and the burden rests upon the plaintiff to establish, as a condition precedent to her right of recovery, that the defect which caused her injury was one of which the city had knowledge, or by the exercise of reasonable care and diligence might have had knowledge, in time to have remedied it or to have prevented the injury. *Smith* v. *Hyde Park, ante,* 168, and cases cited.

There is no evidence that the defendant had actual notice of

---

* *Raymond, J.*

the defect. In order to show that the city had constructive notice it was open to the plaintiff to prove the length of time before the accident during which this condition of the sidewalk had existed. If it had been defective for any substantial length of time, presumably she would not find it difficult to prove that fact, as the place was a much travelled business thoroughfare, was near the subway entrance, and a police officer was stationed there every evening. Yet the record fails to disclose any testimony as to the existence of the defect or the appearance of the sidewalk before the accident. We do not think that the nature and appearance of the defect, as indicated by the testimony, was such that an inference properly could be drawn therefrom by the jury as to the length of time it had existed, although the case is close on this point. It seems apparent from the plaintiff's testimony that by the expression "worn down," * as applied to the bricks, she meant no more than "depressed," which was the fact as shown by the undisputed testimony. In short the plaintiff failed to present any evidence from which a jury properly could infer that the defect had existed long enough to affect the city with notice.

It should be added that there is no basis in the record for the argument that the defective condition was probably brought about by employees of the city. See *Brooks* v. *Somerville*, 106 Mass. 271.

*Exceptions overruled.*

The case was submitted on briefs.

*T. J. Ahern,* for the plaintiff.

*J. F. Aylward,* for the defendant.

---

* The part of the record referred to was as follows: "She testified that the hole or depression was worn down to a V shape, between two and three inches deep and between six and eight inches long; that it was about in the middle of a brick sidewalk; that there was a large number of people around there, and that the bricks were all broken out around the place which was located near and about the city water shut-off."

## MEMORANDUM.

On the first day of December, 1914, the Honorable John Wilkes Hammond resigned the office of a Justice of this court, which he had held since the seventh day of September, 1898.